436 So.2d 139 (1983)
Rick FOLEY, Appellant,
v.
Robert H. DICK, Appellee.
No. 82-1220.
District Court of Appeal of Florida, Second District.
January 26, 1983.
*140 George Browning, III, Sarasota, and James R. Dirmann of Dirmann & Scott, Sarasota, for appellant.
Terence Matthews, Bradenton, for appellee.
GRIMES, Judge.
Foley sued Dick for conversion. The court directed a verdict against him on his claim for punitive damages, but the jury awarded him compensatory damages of $2,650. Dissatisfied with the amount of his judgment, Foley brings this appeal.
Since Foley argues that the court should have submitted his punitive damage claim to the jury, we will state the evidence in the light most favorable to Foley. Foley, a Canadian citizen, was arrested in Florida on Canadian charges of possession of a stolen automobile and possession of stolen credit cards. Dick, a Florida attorney, consulted with Foley at the jail. To secure legal representation Foley instructed a friend to give Dick, as collateral, a diamond ring which Foley had won in a golf tournament. A few days later, while still incarcerated, Foley was charged with attempted escape and criminal mischief. Foley testified that Dick visited him in the jail once after these new charges were filed, but that Dick did not represent him concerning these charges and only discussed with him the payment of Dick's fee. Shortly thereafter, Foley's Canadian lawyer became involved and secured a new Florida lawyer to take Dick's place. Foley then requested Dick to return the ring to him. Although acknowledging that he no longer represented Foley, Dick refused to do so, stating that he would have to consult his records in order to determine his fee for the services rendered prior to the termination of his employment.
Subsequently, Dick sent a letter to Foley's Canadian lawyer indicating that after calculating the time spent on Foley's case he felt that a fee of $250 for professional services and costs would be reasonable. The letter stated that Dick was holding the diamond ring as collateral and that he would release it upon payment of his fee. Foley's brother sent Dick the $250, but Dick declined to return the ring. By this time Foley had been released and returned to Canada. Dick told Foley on the telephone that he needed another $300 for fees and costs for the work he had done before he would return the ring. Foley later sent him a check for $300, but Dick returned it with the notation that the payment had not been made within a reasonable time. When Foley called Dick about this, Dick told him that because of Foley's delay he had sold the ring to make up the difference in what *141 Foley owed him. Thereafter, Dick failed to respond to letters from Foley and his Canadian counsel.
Dick testified that the ring, which Foley told him was worth $1,000, was given to him as part of his fee. He said that his letter advising that his fee would be $250 referred only to his services in connection with the attempted escape and criminal mischief charges. He produced a "receipt" signed by Foley and Dick which stated that a diamond ring worth $1,000 constituted a retainer on a $3,000 fee for representation on criminal charges. Dick did not recall if he gave Foley a copy of this document. Foley said that when he signed the receipt it did not contain the reference to the $3,000 fee. Dick admitted telling Foley that he no longer had the ring, but he nevertheless produced it at the trial.
In suits for conversion, punitive damages are allowable where the circumstances surrounding the conversion are such as to show fraud, actual malice, deliberate violence, or oppression, such gross negligence as to indicate a wanton disregard of the rights of others, or where the wrong partakes of a criminal character. Doral Country Club, Inc. v. Lindgren Plumbing Co., 175 So.2d 570 (Fla. 3d DCA 1965). Measured by this standard and keeping in mind that Dick had a fiduciary obligation to his client, we believe the court erred in taking the issue of punitive damages away from the jury.
Foley also complains that his judgment for compensatory damages was inadequate because he was precluded from proving that the ring had appreciated in value. He testified that the ring was worth $2,650 at the time he gave it to Dick. He was then asked to give his opinion of its value on the date of the trial but was not shown to have any experience in the appraisal of diamond rings. Dick objected on grounds that only the value of the ring on the date of conversion was relevant and that in any event Foley was not qualified to give such an opinion. The court sustained the objection.
Ordinarily, damages for conversion consist of the value of the converted items at the time and place of their conversion, plus interest thereon. In re Estate of Corbin, 391 So.2d 731 (Fla. 3d DCA 1980); Gillette v. Stapleton, 336 So.2d 1226 (Fla. 2d DCA 1976). However, Foley argues that where there is a wrongful conversion of jewelry not held for purposes of commercial traffic, the wrongdoer must pay for any appreciation of value which has occurred until the time of trial. The early case of Moody v. Caulk, 14 Fla. 50 (1872), lends support to this position. However, we need not reach this point because we believe that the court's ruling can be sustained on the alternative ground of Dick's objection.
Generally, one who owns property may testify concerning its value without having special expertise. Jones v. State, 408 So.2d 690 (Fla. 2d DCA 1982). Yet, Foley was not in quite the same position as the usual property owner because under the theory of conversion, upon satisfaction of his judgment, title to the ring will pass to Dick retroactive to the date of the conversion. 18 Am.Jur.2d Conversion §§ 6, 172 (1965). The premise upon which an owner is permitted to testify concerning the value of his property is that one is presumed to be familiar with the property which he owns. Salvage & Surplus, Inc. v. Weintraub, 131 So.2d 515 (Fla. 3d DCA 1961). At the time of the trial, Foley had not even seen the ring for more than five years. Therefore, even if the value of the ring on that date was relevant, we believe that the court had the discretion to refuse to permit him to express an opinion concerning its current value. See Annot., 37 A.L.R.2d 967, 985 (1954), citing many cases from jurisdictions other than Florida which hold that when it plainly appears that an owner has no knowledge of the value of his property, the presumption arising from ownership is overcome and his opinion is inadmissible.
Accordingly, we affirm the judgment for compensatory damages, but we remand the case for a new trial on the issue of punitive damages.
BOARDMAN, A.C.J., and DANAHY, J., concur.