Robert T. MULLIN and Jolie
Ann Mullin, Appellants,

v.

Patricia DZIKOWSKI, Appellee.

No. 99–8085.

United States District Court,
S.D. Florida.

July 26, 2000.

Order Denying Reconsideration
Aug. 8, 2000.

James Scott Telepman, Cohen Norris Scherer Weinberger & Wolmer, North Palm Beach, FL, for appellants.

Garry William O'Donnell, Navon Kopelman O'Donnell & Lavin, Fort Lauderdale, FL, for appellee.

## *ORDER*

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Appellants', Robert T. Mullin and Jolie Ann Mullin, Notice of Bankruptcy Appeal, filed on February 2, 1999. Appellants appeal from the Bankruptcy Court's Final Judgment entered on November 3, 1998. The Court has reviewed the file and is otherwise fully advised in the premises.

### I. Facts

Robert Mullin formed Boca Arena, Inc. (the "Debtor"), for the purpose of developing a basketball arena to benefit the youth of Boca Raton, Florida. Mullin was the Debtor's principal shareholder and president and invested significant amounts of his time and resources in the venture. On June 12, 1991, Mullin caused the Debtor to enter into a fifty year sub-lease with the Boca Raton Airport Authority for a 6.6 acre parcel of commercial property for the site of the proposed arena.

As of January 1993, a number of defaults had occurred under the lease which placed the leasehold interest in jeopardy. On March 17, 1993, the lease was amended to impose the following additional deadlines and obligations upon the Debtor: (1) pay $125,000 for the construction of a blast wall adjacent to the property; (2) arrange for a $2,400,000 loan commitment or letter of credit by April 10, 1993, to ensure con-

struction of the Phase I improvements required under the lease; (3) pay approximately $8,000 in administrative fees; and (4) submit plans for the Phase I improvements no later than June 10, 1993 and commence construction no later than October 20, 1993. As of March 1993, the Debtor had no assets, other than the leasehold interest, and had no ability to fulfill its financial obligations.

To avoid losing the lease, Mullin and another potential investor, Joseph Ballarini, approached James B. Orthwein and P.J. Orthwein to discuss the possible participation of the Orthweins in the construction of a family entertainment center. Eventually, the parties worked through the details and formed Boomer's Sports and Recreation, Inc. ("Boomer's"). Shortly thereafter, Boomer's negotiated with the Boca Raton Airport Authority to effect an assignment of the lease from the Debtor to Boomer's. The lease was assigned to Boomer's on April 7, 1993, and Boomer's assumed all obligations under the lease and the amendments thereto.

In conjunction with the formation of Boomer's and the subsequent assignment of the lease, Boomer's agreed to pay Mullin $180,000 cash and issued Mullin and his wife 220 shares of Boomer's stock. The 220 shares represented a 22% interest in Boomer's and was valued by the parties at $220,000. Thereafter, for a period of approximately 12 months after the April 7, 1993 lease assignment, Mullin worked exclusively on the formation of Boomer's. The Debtor received no remuneration for the assignment of the lease.

On March 25, 1996, Patricia Dzikowski, Appellee and Trustee for the Debtor, filed an adversarial proceeding against Boomer's and Mullin alleging fraudulent transfer of the shares of stock. The Trustee amended the complaint to challenge both the receipt of the 22% interest in Boomer's and the $180,000 payment to Mullin. The Amended Complaint alleged claims for breach of fiduciary duty against the Mullins, conversion against the Mullins, and individual liability against the Mullins as the alter ego of the Debtor.

The case was tried over four days and, after the trial, the Bankruptcy Court entered judgment in favor of the Trustee as to the breach of fiduciary duty claim, the conversion claim and the alter ego claim. To a great degree, the Final Judgment was premised upon the Bankruptcy Court's finding of fact that the $180,000 and 220 shares in Boomer's constituted compensation to Mullin for the services he performed on behalf of the Debtor and for his efforts in facilitating the lease assignment. On February 2, 1999, Appellants filed the appeal we now consider.

## II. Standard of Review

The Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. *Fed. R. Bankr.P.* 8013; *Green Tree Acceptance, Inc. v. Calvert*, 907 F.2d 1069, 1071 (11th Cir.1990). Equitable determinations by the Bankruptcy Court are reviewed for an abuse of discretion. *See In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir.1990). The Bankruptcy Court's conclusions of law are reviewed *de novo*. *See In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990).

## III. Discussion

Appellants raise four grounds as the basis of this appeal: (1) the Bankruptcy Court's findings of fact are clearly erroneous; (2) the Bankruptcy Court erred in finding that Mullin breached a fiduciary duty owed to the Debtor; (3) the Bankruptcy Court erred in concluding that the Mullins were liable for converting the assets of the Debtor; and (4) the Bankruptcy Court erred in concluding that Mullin is the alter ego of the Debtor. The Court will discuss each ground in turn.

1. *The Bankruptcy Court's findings of fact are not clearly erroneous*

As their first ground of appeal, Appellants argue that the Bankruptcy Court's

finding that the $180,000 and 220 shares in Boomer's which were transferred to Mullin constituted compensation to Mullin for the services her performed on behalf of the Debtor and for his efforts in facilitating the lease assignment is clearly erroneous. We do not agree.

An appellate court should not disturb a trial court's factual finding unless "the reviewing court ... is left with the definite and firm conviction that a mistake has been committed." *See Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Taking the record as a whole, we conclude that there is ample evidence to support the Bankruptcy Court's finding of fact and decline Appellants invitation to reweigh the evidence. *See id.* at 573–74, 105 S.Ct. 1504 ("[i]f the [trial court's] account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced it would have weighed the evidence differently").

The Bankruptcy Court's finding is supported not only by the circumstances surrounding the lease assignment and stock transfer, but also by the deposition testimony of Mullin himself. When asked whether he had given anything to Boomer's in exchange for the stock. Mullin replied:

> Yes. I gave them what was salvaged from the lease that was previously assigned to Boca Sportsplex.

*Deposition Testimony of R. Mullin,* June 24, 1993, p. 14. There was also deposition testimony presented at trial which intimated that it was Mullin's idea that he be compensated to the extent of the funds he had personally invested in the Debtor, and that it was agreed that Mullin would get equity credit for all funds invested in the Debtor. Moreover, Boomer's internal financial documents, which list a lease acquisition fee of $220,000, also support the Bankruptcy Court's finding. Based upon this evidence, and upon a review of the record as a whole, we hold that despite the existence of evidence to the contrary the finding of the Bankruptcy Court is not clearly erroneous. *See Anderson,* 470 U.S. at 573–74, 105 S.Ct. 1504.

2. *The Bankruptcy Court did not err in finding that Mullin breached a fiduciary duty owed to the Debtor*

As a second ground for appeal, Appellants argue that the Bankruptcy Court erred in holding that Mullin breached a fiduciary duty owed to the Debtor. In support of this argument Appellants assert: (1) the Bankruptcy Court's legal conclusion is based upon a clearly erroneous factual finding and must be reversed; and (2) even if the factual finding is correct there was no breach of fiduciary duty because the lease was of no value to the Debtor. We do not agree.

The Bankruptcy Court premised its holding that Mullin breached a fiduciary duty to the Debtor upon its factual finding the $180,000 and 220 shares in Boomer's were compensation for service provided to the Debtor. The Bankruptcy Court reasoned that because the payments were rightly the Debtor's property, Mullin breached his fiduciary duty when he accepted the payment in his individual capacity. As stated above, this underlying finding of fact is amply supported by the evidence and is not clearly erroneous. As such, we must accept the factual finding as correct.

■ Appellants next argue that even accepting the underlying finding of fact as true, the Bankruptcy Court erred as a matter of law when it found that the acceptance of the payment was a breach of fiduciary duty because the lease was of no value to the Debtor. In making this argument, Appellants cite to a Florida District Court case which holds:

> while a fiduciary obligor is precluded from appropriating for himself a business opportunity that belongs to the fi-

duciary beneficiary, ... a fiduciary obligor is not precluded from entering into and engaging in another business enterprise similar to but separate from the fiduciary beneficiary if he is in good faith and refrains from interference with the business of the beneficiary.

*Cohen v. Hattaway*, 595 So.2d 105, 109 (Fla.Dist.Ct.App.1992) (citing *Renpak, Inc. v. Oppenheimer*, 104 So.2d 642 (Fla.Dist. Ct.App.1958)). Appellants argue that because the lease was of no value to the Debtor, the sale of the lease and acceptance of the funds does not constitute an appropriation of a "business opportunity." In effect, Appellants argue that no breach occurred because the Debtor was no worse off after the sale of the lease than before the sale, and in fact may have been better off after the sale. What Appellants' argument ignores, however, is the fact that while the lease was of no value to the Debtor, the lease had value in the open market to other developers. That value, and the possibility of a sale to other developers, is the business opportunity that was appropriated by Mullin. Indeed, the sale of the lease was perhaps the greatest business opportunity presented to the Debtor in its ill-fated existence; the Debtor held an asset that it valued at $0 and was presented with the opportunity to sell this asset for $400,000 in cash and stock. Based upon the Bankruptcy Court's findings, which are not clearly erroneous, it was not error to enter judgment for the Trustee on the breach of fiduciary duty claim.

3. *The Bankruptcy Court did not err in concluding that the Mullins were liable for converting the assets of the Debtor*

■ As their third ground for appeal, Appellants argue that the Bankruptcy Court erred in entering judgment for the Trustee on the conversion count. In support of this argument, Appellants argue that: (1) the Bankruptcy Court went beyond the pleadings in entering judgment for the Trustee; and (2) the Bankruptcy Court incorrectly calculated the damages remedy available to the Trustee.

Appellants argue that the Bankruptcy Court erred when it entered judgment on the conversion count based upon its finding that "Mullin converted the leasehold interest between the Debtor and the Boca Raton Airport Authority for his personal benefit when he assigned the lease to Boomer's in exchange for $180,000 and the shares in Boomer's." *Bankr.Ct. Mem. Op.* Specifically, Appellants argue that because the Second Amended Complaint alleges that the Mullins converted the stock and cash, and does not specifically allege that the Mullins converted the leasehold interest, the Bankruptcy Court went beyond the pleadings in finding the Mullins liable for the conversion of the leasehold interest. We do not agree.

Appellants' argument relies upon an extremely constrained reading of the allegations in the complaint and, again, is premised upon a challenge to the underlying factual finding that the stock and cash transferred to the Mullins was for service provide to the Debtor and therefore was the rightfully the Debtor's property. Upon a review of the allegations in the Second Amended Complaint, we conclude that the conversion count alleges: (1) the leasehold interest was the property of the Debtor, *Second Amended Complaint* ¶ 12; (2) Mullin caused the transfer of the leasehold interest to Boomer's, *Id.* at ¶ 13; (3) the Mullins received $400,000 in cash and stocks as a result of the transfer, *Id.* at ¶¶ 17, 38; (4) the Debtor received no remuneration for the transfer of the lease, *Id.* at ¶ 17; and (5) the $400,000 was the property of the Debtor, *Id.* at ¶ 39. These allegations clearly state a claim for conversion, *see Cohen*, 595 So.2d at 108, and based upon the evidence presented at trial, the Bankruptcy Court correctly held that such a conversion had taken place.

■ Moreover, the Bankruptcy Court did not err in determining the damages arising from the Mullins' conversion. It is

well established Florida law that the measure of damages for conversion is the fair market value of the converted property at the time of conversion. *Foley v. Dick,* 436 So.2d 139, 141 (Fla.Dist.Ct.App.1983). Mullin argues that because the leasehold interest was of little or no value to the Debtor at the time of the conversion, the damages arising from the conversion cannot be the $180,000 and 220 shares of stock. This argument, however, ignores the fact the value of the lease to the Debtor and the fair market value of the lease are not synonymous. The Bankruptcy Court found that although the lease was of little or no value to the Debtor, the fair market value of the lease was the value of the cash and stocks transferred to the Mullins. This finding is not clearly erroneous and will not be disturbed.

4. *The Bankruptcy Court erred in concluding that Robert Mullin is the alter ego of the Debtor*

As their final ground for appeal, Appellants argue that the Bankruptcy Court erred when it entered final judgment in favor of the Trustee as to the alter ego count. Specifically, Appellants argue that Bankruptcy Court applied an incorrect legal standard in it analysis, and argue further that even if the Bankruptcy Court applied the correct legal standard, the standard was improperly applied.

In analyzing the alter ego count, the Bankruptcy Court, relying upon *Eig v. Insurance Co. of North America,* 447 So.2d 377 (Fla.Dist.Ct.App.1984), wrote:

> a corporate veil will not be pierced unless it is established that (1) the corporate form was a mere device or sham to accomplish some ulterior purpose; (2) the corporation was organized or used to mislead creditors or to perpetuate a fraud upon them or evade existing personal liability; and (3) the nature of the relationship between the shareholder and the corporation was so completely personalized that proof of actual fraud is

unnecessary in order to find the shareholder personally liable.

*Bankr.Ct. Mem. Op.* The Bankruptcy Court found that the Trustee had failed to establish that the requisite elements exist to pierce the corporate veil and then went on to cite the Florida Supreme Court's opinion in *Advertects, Inc. v. Sawyer Industries, Inc.,* 84 So.2d 21, 24 (Fla.1955) for the proposition that the corporate veil could be pierced if "in some fashion ... the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholder." The Bankruptcy Court then reasoned that because the Trustee had prevailed on the conversion count, she must prevail on the alter ego count. Appellants argue that the Bankruptcy Court erred when it relied upon *Advertects* because *Advertects* has subsequently been overruled by the Florida Supreme Court and is no longer good law. We do not agree.

 Much of the confusion regarding this issue results from the pre–1984 split in the Florida District Courts regarding the requisite elements of proof to pierce the corporate veil, and the Supreme Court of Florida's resolution of this split in *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla.1984). As explained in *Dania Jai–Alai,* prior to 1984, Florida courts were split as to whether a showing of improper conduct was required to pierce the corporate veil. One line of cases held that if a plaintiff made a showing that the "relationship of the shareholder and the corporation was ... completely personalized[,] ... a showing of actual fraud [was] unnecessary." *Eig,* 447 So.2d at 379 (citing *Vantage View, Inc. v. Bali East Development Corp.,* 421 So.2d 728 (Fla.Dist.Ct.App.1982)). While another line of case held that "the mere fact that one or two individuals own and control the stock structure of a corporation" is insufficient to pierce the corporate veil, and that a showing "that the corporation was organized or employed to mislead creditors or to work a fraud upon them" is required.

*Advertects,* 84 So.2d at 23. In *Dania Jai–Alai,* the Florida Supreme Court resolved this split in favor of the rule espoused in *Advertects,* holding that "the corporate veil may not be pierced absent a showing of improper conduct." 450 So.2d at 1121. As such, rather than overrule *Advertects* as Appellants argue, *Dania Jai–Alai* endorses the rule announced in *Advertects.* Accordingly, we conclude that the Bankruptcy Court did not err in relying upon *Advertects* in analyzing the alter ego count.

■ This conclusion, however, does not end our analysis. In *Advertects,* the Florida District Court held:

in order to justify the issuance of a rule directing individual stockholders to show cause why they should not be held personally accountable for the corporation's debts, there should be a preliminary showing that the corporation is in actuality the alter ego of the stockholders and that it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes, or in some fashion that the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stock holders, or that the corporate structure was not bona fide established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders.

84 So.2d at 24. Relying upon this passage, Appellants argue that under *Advertects,* in order to pierce the corporate veil a plaintiff must demonstrate both that: (1)the corporation is in actuality the alter ego of the stockholder (i.e. that the shareholder dominated and controlled the corporation); and (2) the existence of some improper act, such as conversion or depletion of corporate assets. Appellants further argue that because the Bankruptcy Court never made a finding that the Debtor corporation was dominated and controlled by Mullin, its ruling on the alter ego count is in error. Conversely, the Trustee argues that the passage lists situations when a corporate

veil may be pierced and does not require a showing of domination and control. Of the two proffered readings, we agree with the former and hold that in order to pierce the corporate veil a plaintiff must demonstrate that the corporation was dominated and controlled by the shareholder, and the existence of some improper act. *See Seminole Boatyard, Inc. v. Christoph,* 715 So.2d 987, 990 (Fla.Dist.Ct.App.1998) (listing a showing of domination and control as a required element to pierce the corporate veil).

■ In its analysis of the alter ego claim, the Bankruptcy Court found that the Trustee had failed to demonstrate that the corporation was dominated and controlled by Mullin. In the absence of such a finding, the entry of judgment against Mullin as to this claim was in error. Accordingly, we reverse and remand the judgment of the Bankruptcy Court with instructions to enter judgment in favor of Appellants as to that claim.

■ Moreover, although not raised by the parties, we hold as an alternative ground for our ruling that judgment should be entered in favor of Mullin on the alter ego claim because the Trustee lacks standing to assert this claim. *See Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (holding that the issue of standing may be raised *sua sponte* ). Pursuant to 11 U.S.C. § 704(1), a Chapter 7 trustee is under a duty to "collect and reduce to money the property of the estate." As such, the trustee is the "proper party to pursue a cause of action on behalf of the debtor." *Seminole Boatyard,* 715 So.2d at 990. This mandate does not grant the trustee standing to assert any claim relating to the debtor, but rather grants the trustee standing to pursue any claim in which the debtor is a party in interest. *Id.*

Here, the Trustee asserts a claim for alter ego liability in an attempt to hold Mullin personally liable for the debts owed to the estate's creditors. This liability ex-

tends beyond the value of the stock and cash reverted to the estate and includes all debts owed by the estate to all of its potential creditors. Florida law is clear that a bankruptcy trustee lacks standing to assert such a claim because the money sought to be collected is not owed to the estate, but rather is owed to the estate's creditors. *Id.* at 989–90; *see E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 986 (11th Cir.1990) (noting that the Bankruptcy Code does not authorize a trustee to collect money owed to a creditor of the estate but not to the estate itself). As such, we hold, as an alternate ground for our ruling, that the Trustee lacks standing to assert an alter ego claim and therefore reverse and remand the judgment of the Bankruptcy Court.

## IV. Conclusion

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Final Judgment of the Bankruptcy Court is AFFIRMED IN PART and REVERSED AND REMANDED IN PART. The Final Judgment is AFFIRMED with regard to the Bankruptcy Court's findings of fact, and judgment as to the breach of fiduciary duty and the conversion counts and REVERSED AND REMANDED as to the alter ego count. Upon remand, the Bankruptcy Court shall enter judgment in favor of Appellants on the alter ego claim.

It is further ORDERED AND ADJUDGED that all pending motions are DENIED AS MOOT and the Clerk of the Court is instructed to CLOSE this case.

### ORDER DENYING MOTION FOR RECONSIDERATION

THIS CAUSE comes before the Court upon Appellants' Motion for Reconsideration, filed on August 3, 2000. In this motion, Appellants move the Court to reconsider portions of its July 26, 2000 Order. Specifically, Appellants ask that the Court reconsider its affirmance of the Bankruptcy Court's factual findings.

A motion to alter or amend a judgment must indicate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Wendy's Int'l, Inc. v. Nu–Cape Construction, Inc.*, 169 F.R.D. 680, 684 (M.D.Fla.1996). There are generally three grounds upon which reconsideration of an order is appropriate: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct error or manifest injustice. *Id.* It is the last ground upon which Appellants apparently rely for their motion for reconsideration. The prior decision of this Court will not be altered absent a showing of "clear and obvious error" where the "interests of justice" demand correction. *Prudential Securities, Inc. v. Emerson*, 919 F.Supp. 415, 417 (M.D.Fla.1996); *American Home Assurance Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 n. 2 (11th Cir., 1985). Appellants have failed to meet this heavy burden.

As stated in the original order, an appellate court should not disturb a trial court's factual finding unless "the reviewing court ... is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Moreover, "[i]f the [trial court's] account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced it would have weighed the evidence differently." *See id.* at 573–74, 105 S.Ct. 1504. Despite the existence of evidence to the contrary, the Bankruptcy Court's findings are not clearly erroneous and, therefore, cannot be disturbed. As such, it is

ORDERED AND ADJUDGED that Appellants Motion for Reconsideration is DENIED.