STONE, Judge.
Following a non-jury trial, the trial court entered a judgment in favor of Appellee, the landlord under a commercial lease of a boatyard facility. This judgment was founded, at least in part, on an erroneous conclusion by the trial court that the parties had abandoned their written ten-year lease (which included an option to purchase) and entered *220 into a superseding “oral contract.” The parties, however, never pled, nor raised as issues, the existence of an oral contract, and the trial court’s conclusion is not supported by the record.
The parties entered into a written lease/option agreement on November 16, 1989. This agreement provided that the tenant occupy the premises on December 1, 1989. However, by mutual consent, the tenant took possession immediately after executing the lease, thereby enabling the landlord to receive the $100,000 deposit two weeks early.
The tenant stopped paying rent on October 1, 1990, and initially sued for rescission and damages caused by alleged breaches of the written lease. The landlord filed a separate action for eviction, and the tenant counterclaimed against the landlord, raising identical issues as in its initial suit. The two cases were consolidated. Pursuant to the landlord’s motion to compel payment of rent, the trial court authorized withholding of lease payments pending final hearing. Although there were multiple charges and counts filed by the tenant, including claims for fraud and other tort damages, we address only the issues concerning the landlord’s breach of the lease agreement, as these we find have merit.
The pertinent sections of the lease provided:
Article XVIII (Inspections and Conditions) — As a condition precedent to Tenant’s obligations pursuant to this Lease, Landlord shall provide to Tenant, at Landlord’s sole cost and expense, an environmental audit of the Premises effective as of November, 1989, performed by a licensed, qualified environmental engineering firm mutually satisfactory to Landlord and Tenant. The environmental audit shall affirmatively opine that there are no land fills, Hazardous Substances ..., underground storage tanks ... or concealed fill-ins or other violations of Environmental Laws on, in, under or about the Premises.
Article XXIII (Amendments) — This Lease may not be amended, modified or terminated, nor may any obligation hereunder be waived orally, and no such amendment, modification, termination or waiver shall be effective ... unless it is in writing....
The landlord never supplied the audit pursuant to article XVIII of the lease agreement because prior to executing the lease, the landlord inadvertently contaminated the property by removing an underground fuel tank without a permit.[1] Although the landlord claimed that the contamination was minor, it was not disclosed to the tenant, who was instead led to believe the audit would be forthcoming. Subsequently, the landlord entered into a consent order with the state providing, inter alia, for future cleanup under the state’s Abandoned Tank Reimbursement Program.
There is no indication in the record that the environmental audit requirement was waived by the tenant, either by agreement or by conduct. To the contrary, both parties acted as if the audit was an ongoing obligation surviving the lease signing, and there was no trial court finding otherwise. Rather, the trial court concluded that the tenant suffered no damages, notwithstanding the present contamination, and that the audit requirement could not be fulfilled due to “impossibility.” This “impossibility” apparently resulted from the existing contamination, although the trial court found that the landlord caused this problem through its own conduct.
The trial court ultimately concluded that “the actual lease agreement between the parties was in fact an oral contract, only partially evidence by the written lease....” The court apparently found that by taking over the premises two weeks early, before the environmental audit was provided, and by staying in possession and operating its business despite the landlord’s failures, the parties were therefore governed not by the written lease, but by a separate oral contract the terms of which are unknown.
The record reflects no pleadings or argument by the tenant or by the landlord that the parties entered into an oral contract, presumably with terms differing from the written lease. Nor was there any proof or ruling that would have alerted the tenant *221 that it was called upon to defend such a claim.[2] Rather, this ease at all times was litigated on the written lease.
Finally, although the landlord did not initially seek money damages, the trial court allowed amendment of the pleadings at the end of the landlord’s case, to assert claims of quantum meruit and unjust enrichment. The final judgment awarded the landlord an amount equal to all unpaid rent due under the lease, less the deposit. No other damages were awarded to either party.
We reverse, in part, the final judgment because we find that the trial court ruled on the basis of issues that were neither addressed in the pleadings nor tried by consent. Hart v. Hart, 458 So.2d 815 (Fla. 4th DCA 1984); Gordon v. Gordon, 543 So.2d 428 (Fla. 2d DCA 1989); Spencer v. Devine, 364 So.2d 22 (Fla. 1st DCA 1978). We note that there is no contention that either party was on notice of these potential bases for the court’s ruling.
The trial court may well have deemed its oral contract conclusion to be the only way out of a confusing evidentiary labyrinth. Nevertheless, the court may not alter the terms of the parties’ agreement by superimposing a separate agreement of unknown terms and unsupported by the record. See Rybovich Boat Works, Inc. v. Atkins, 587 So.2d 519 (Fla. 4th DCA 1991), rev. denied, 599 So.2d 654 (Fla.1992); Balto v. Matey, 464 So.2d 579 (Fla. 4th DCA 1985); Simpson v. Young, 369 So.2d 376 (Fla. 1st DCA 1979).
While the landlord did assert that the audit requirement was ambiguously worded and waived by the tenant’s conduct, neither of these arguments were accepted by the trial court. There is also no indication in the record that the parties intended to orally modify the agreement in some specific manner.[3] See generally King Partitions & Drywall, Inc. v. Donner Enter. Inc., 464 So.2d 715 (Fla. 4th DCA 1985); Linear Corp. v. Standard Hardware Co., 423 So.2d 966 (Fla. 1st DCA 1982).
Notwithstanding the “condition precedent” language in the lease, we are not unmindful that the tenant should not be allowed to accept the benefits of possession while avoiding all duty of payment, assuming that its damages do not exceed the rent owed. See United Contractors, Inc. v. United Constr. Corp., 187 So.2d 695 (Fla. 2d DCA 1966). We do not address whether the trial court might well reach the same result if supported by other findings. We also note that we cannot determine whether the court’s finding that the tenant sustained no damages is based on a failure to prove the amount of damage suffered, or whether it is based on the fact that the pollution is minor and should ultimately be decontaminated in cooperation with the state. If the latter, the trial court, on remand, should determine the extent to which the tenant has proved, if at all, a reduction in the lease and option value by virtue of the landlord’s breaches.
As to all tort claims raised, the judgment is affirmed. As to the tenant’s contractual claims and the landlord’s claims arising in quantum meruit, the judgment is reversed and remanded for further proceedings.
DELL, C.J., and FARMER, J., concur.

. There was proof of other failures by the landlord to comply with its lease obligations, such as a requirement under article II to repair and supply an engineering report on the "Paint Barn.” The environmental audit issue, however, was the principal claimed breach.

. The trial court also determined that the statute of frauds was inapplicable, although the record does not reflect that this was ever raised in the litigation.

. Such an approach would be complicated by the anti-waiver clause providing against oral modifications.