715 So.2d 987 (1998)
SEMINOLE BOATYARD, INC., a Florida corporation, Juniper Seminole Properties, Ltd., George Whitten, Charles Whitten, and Steven Van Voast, Appellants,
v.
Robert W. CHRISTOPH, Bud Adams, and Adams Investment Company, Inc., Appellees.
No. 97-2190.
District Court of Appeal of Florida, Fourth District.
June 24, 1998.
Rehearing, Rehearing, Clarification and Certification Denied September 2, 1998.
*988 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A. and Scott G. Hawkins of Jones Foster Johnston & Stubbs, P.A., West Palm Beach, for appellants.
John W. Kearns of John W. Kearns, Coral Gables, Howard I. Weiss of Weiss & Handler, P.A., Boca Raton and Lawrence Schantz of Schantz, Schatzman & Aaronson, P.A., Miami, for Appellee-Robert W. Christoph.
Rehearing, Rehearing En Banc, Clarification and Certification Denied September 2, 1998.
SHAHOOD, Judge.
We reverse the trial court's grant of summary judgment in favor of appellee, Robert W. Christoph, and remand for further proceedings on appellant's, Seminole Boatyard, Inc., complaint to pierce the corporate veil of Florida Atlantic Marine.
Seminole Boatyards, Inc. ("Seminole") entered into a ten-year, commercial lease agreement with Robert Christoph ("Christoph"), as president of Florida Atlantic Marine, Inc. ("FAM"). FAM paid rent under the lease for approximately one year, but then stopped paying and sued Seminole for rescission of the lease agreement. Seminole filed a separate action against FAM, and Christoph, individually, to recover the unpaid rent, alleging that Christoph had diverted funds from FAM, that FAM was the alter ego of Christoph, and that Christoph had intentionally used FAM to "break" George Whitten, the president of Seminole, and force Seminole to lose the property through foreclosure. The litigation resulted in a judgment in favor of Seminole in the amount of $746,998.00 representing unpaid rent.
On appeal, the judgment was affirmed, but remanded to the circuit court for clarification. Florida Atlantic Marine, Inc. v. Seminole Boatyard, Inc., 630 So.2d 219 (Fla. 4th DCA 1993). During the pendency of the proceedings on remand, FAM filed for bankruptcy. The circuit court litigation concluded with an amended final judgment and a second affirmance on appeal. Florida Atlantic Marine, Inc. v. Seminole Boatyard, Inc., 677 So.2d 849 (Fla. 4th DCA 1996).
Following unsuccessful motions to vacate and for rehearing, Christoph approached the bankruptcy trustee to purchase FAM's claims against Christoph for $55,000. The trustee petitioned the bankruptcy court for permission to sell the estate's claim against Christoph. At the hearing in the bankruptcy court, Seminole voiced its concern that Christoph would obtain the release and then use it in the state court to block Seminole's claim. The bankruptcy judge replied, "no, I think we covered that," and asked Christoph's counsel if he was "clear on that" to which counsel responded:
I am clear on that. No, what we propose to buy is a general release from the trustee of the estate. Whether that is against their claim or not is, I think you ruled is up to the state court, but that is what our offer was, that is what they took our $50,000 with the understanding, I assume, of the general release from the trustee and that is what we are buying.
Christoph was then allowed to purchase FAM's claims against him for $55,000 in exchange for a general release. The order approving the sale provided in part the following:
5. This Order shall not constitute, in any fashion, a finding regarding the extent, validity or scope of the claims that this estate may hold against Mr. Christoph, it being clearly understood by the purchaser that he is only buying the Trustee's right, title and interest, whatever that may be, "as-iswhere-is" and without any warranties. This Order shall not constitute an adjudication as to whether any creditor, including but not limited to Seminole Boatyard, Inc., in Case No. CL 92-642-AI, may pursue a claim against Mr. Christoph in that creditor's individual name in any court of competent jurisdiction. (Italics in original; underlining added).
*989 Seminole then brought this action against Christoph, individually, for breach of contract, implied contract, and quantum meruit seeking payment of the unpaid rent. Christoph answered by asserting release by the bankruptcy trustee, and later moved for summary judgment on that basis. The trial court granted the summary judgment without making findings. This appeal follows.
Pursuant to 11 U.S.C. § 704(1), a Chapter 7 trustee shall "collect and reduce to money the property of the estate." The trustee is the proper party to pursue a cause of action on behalf of the debtor. A bankruptcy court must apply the law in the state where it sits to determine whether the trustee is authorized to assert an alter ego action. See In re Homelands of DeLeon Springs, Inc. 190 B.R. 666 (Bankr.M.D.Fla.1995); Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1348 (7th Cir. 1987); see also In re Adam Furniture Indus., Inc., 191 B.R. 249 (Bankr.S.D.Ga.1996). If the state's law allows the debtor corporation to assert a claim against a controlling shareholder to pierce its own corporate veil, then the claim is property of the estate. In re Ozark Restaurant Equip. Co., 816 F.2d 1222, 1225 (8th Cir.1987). Where, however, an obligation or liability runs to a corporate creditor personally, rather than to the debtor corporation, there is no right of action in the estate. See id.
Whether the trustee in bankruptcy may assert an alter ego action against the president of the debtor corporation on behalf of a creditor seems to be an issue of first impression in Florida's state courts; however, a similar issue was addressed by the Eleventh Circuit Court of Appeals in E.F. Hutton & Co. v. Hadley, 901 F.2d 979 (11 Cir.1990). In that case, the court considered whether a bankruptcy trustee had standing to pursue a negligence claim against a broker on behalf of creditors who had purchased securities from the debtor. The court recognized a divergence among the circuits regarding the trustee's standing to assert claims of the debtor's creditors, and ultimately adopted the reasoning of those courts which decline to endow the trustee with such power. See id. at 985-86. The Eleventh Circuit agreed that nothing in the Bankruptcy Code authorizes a trustee to collect money owed to a creditor of the estate, but not to the estate. See id. at 986 (citing Ozark). The court did not specifically address the issue of whether the trustee may assert a claim on behalf of a creditor based on the alter ego theory, and limited its holding to the facts of that case.
In Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the court considered whether a corporation's trustee in reorganization had standing to bring an action, on behalf of persons holding debentures issued by the debtor corporation, for claims of misconduct by an indenture trustee. In analyzing the issue, the court identified three factors supporting a finding of no standing. First, the bankruptcy statute did not confer standing. See id. at 428, 92 S.Ct. 1678. Second, the debtor corporation had no claim against the indenture trustee. See id. at 429-30, 92 S.Ct. 1678. Third, there existed the possibility that the trustee's suit on behalf of the debenture holders could be "inconsistent with any independent actions that they might bring themselves." See id. at 430, 92 S.Ct. 1678. The court ultimately concluded that the trustee lacked standing; however, the holding was not based on a conclusion that conferring such standing to the reorganization trustee would be imprudent, but merely on a determination that the matter was within Congress' domain, and Congress had not yet indicated an intention to confer such standing. See id. at 434, 92 S.Ct. 1678.
In Ozark, the court noted that in a subsequent overhaul of the Bankruptcy Code, Congress had considered but rejected a House bill expressly intended to overrule Caplin. Ozark, 816 F.2d at 1227-28 n. 9. Ultimately, the revised code did not include a provision granting either a reorganization or liquidation trustee standing to assert general causes of action on behalf of the bankrupt estate's creditors. Ozark, 816 F.2d at 1228. The Ozark court concluded that Caplin was still good law, and applying the factors enunciated in Caplin, held that the trustee in Ozark did not have standing to bring an alter *990 ego action on behalf of the debtor corporation's creditors.
In Williams v. California 1st Bank, 859 F.2d 664, 667 (9th Cir.1988), the court reached the same conclusion stating,
We agree with the Eighth Circuit that Congress' express decision not to overrule Caplin is "extremely noteworthy." Ozark Equip. Co., 816 F.2d at 1228. We also share that court's certitude that "Congress' message is clear-no trustee, whether a reorganization trustee as in Caplin or a liquidation trustee[,] has power under ... the Code to assert general causes of action, such as [an]alter ego claim, on behalf of the bankrupt estate's creditors." See id. (Emphasis added.)
We agree with the Ozark and Williams courts that Caplin is still good law, and therefore address the factors considered in Caplin as they apply to the facts of this case.
In Caplin the Supreme Court set forth three reasons why the trustee lacks standing to pursue an action against a third party for the benefit of the debtor's creditors: (1) the statute nowhere includes a suggestion that the trustee should "assume the responsibility of suing third parties on behalf of debenture holders", (2) the debtor has no claim against the trustee; and (3) there exists the possibility that the trustee's suit on behalf of the creditors could be inconsistent with any independent action they might choose to bring themselves. See id. at 428, 92 S.Ct. 1678.
In this case, Seminole Boatyard, and not the estate, is clearly the real party in interest in the alter ego action. Therefore, the trustee would be attempting to collect money not owed to the estate, an outcome not contemplated in the bankruptcy statutes. Second, as in Williams, FAM has no claim of its own to assert against Christoph. Lastly, there exists a possibility of inconsistencies between the positions taken between Seminole and the trustee as to any causes of action each may pursue.
In addition, the Florida Supreme Court has imposed a strict standard upon those wishing to pierce a corporate veil. Generally, the rule is that the corporate veil will not be pierced absent a showing of improper conduct. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1121 (Fla.1984); accord Steinhardt v. Banks, 511 So.2d 336 (Fla. 4th DCA 1987). Under this standard, it must be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. See id. Three factors must be proven by a preponderance of the evidence:
(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
(2) the corporate form must have been used fraudulently or for an improper purpose; and
(3) the fraudulent or improper use of the corporate form caused injury to the claimant.
In re Hillsborough Holdings Corp., 166 B.R. 461, 468 (Bankr.M.D.Fla.1994)(citing Dania Jai-Alai). Whether there has been improper conduct is a jury question. Dania Jai-Alai.
Based upon Caplin and its progeny, the trustee in this case clearly would have no standing to assert an alter ego claim on behalf of Seminole, therefore the general release purchased by Christoph from the trustee does not preclude Seminole from seeking retribution in the circuit court on that theory. Accordingly, we hold that the trial court erred in granting summary judgment against Seminole based on the release, and remand to allow Seminole to prove improper conduct sufficient to pierce FAM's corporate veil.
REVERSED AND REMANDED.
POLEN and STEVENSON, JJ., concur.