SHEPHERD, J.
 

 This is an appeal of a non-final order denying a judgment creditor’s Amended Motion for Proceedings Supplementary and Motion for Issuance of Writ of Execution, pursuant to Florida Rule of Appellate Procedure 9.130(a)(4). We have jurisdiction. The question presented is whether one particular creditor has standing to pursue derivative claims, alleging loss or damage to a person or entity, against a debtor company, which has made a statutory assignment for the benefit of creditors pursuant to Chapter 727 of the Florida Statutes after the assignment has been made. For the reasons set forth below, we answer the question in the negative.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 This case arises from a thwarted effort by appellant, Moffatt & Nichol, Inc., etc. (Moffatt), to obtain a writ of execution
 
 [1]
 
 and conduct proceedings supplementary in furtherance of recovering $179,926.46 due it under the terms of an Amended Final Judgment rendered in its favor and against appellee, B.E.A. International Corporation, Inc., etc. (BEAI), on March 25, 2008, as a result of BEAI’s breach of the payment terms of an architectural services agreement between the two entities (“the Contract Case”). On April 29, 2008, Moffatt executed a judgment lien certificate and sent it to the Secretary of State for recording. On that same date, BEAI made an Assignment for the Benefit of Creditors, pursuant to Chapter 727 of the Florida Statutes, to Michael Phelan, a fiduciary appointed by BEAI for the purpose of liquidating BEAI’s assets for the benefit of all creditors.
 
 See
 
 § 727.101, Fla. Stat. (2008). Two days later, Michael Phelan timely filed a separate Petition Commencing Assignment for The Benefit of Creditors in the circuit court to facilitate the performance of his duties (“the Assignment Case”).
 
 See
 
 § 727.104, Fla. Stat. (2008).
 

 Two weeks after that, on May 17, 2008, Moffatt filed a Motion for Proceedings Supplementary in the Contract Case against the assignor, BEAI, and a related third party, BEA Architects, Inc. (“BEAA”), which Moffatt alleges miraculously appeared to continue the business of BEAI in all respects — same location, employees, office equipment, telephone numbers, website, and President (Bruno Ramos) with the same $250,000 salary. On June 25, 2008, over Moffatt’s objection, the trial court in the Assignment Case granted Assignee Michael Phelan’s request for approval of a contract for the sale of certain specified assets of BEAI to BEAA, free and clear of all liens and encumbrances, including the judgment lien held by Mof-
 
 *898
 
 fatt, for the sum of $25,000. The order acknowledged Moffatt’s position that the filing of the petition did not compromise Moffatt’s right to engage in proceedings supplementary in the Contract Case.
 

 Two days later, Moffatt filed an Amended Motion for Proceedings Supplementary and to Implead Third Parties in the Contract Case. The motion sought to add Art, Design & Construction, Inc. (“ADC”), River Property, a joint venture (“River Property”), 4111 Lejeune Road, Inc. (“4111 Le-jeune Road”), Ahern-Plummer, Inc. (“Ahern-Plummer”), Addition Acquisitions, LLC (“Addition Acquisitions”), Bruno Ramos and his wife, Maritz Ramos, as additional third-party defendants.
 
 [2]
 
 Mof-fatt alleged that BEAA and the proposed additional corporate defendants were all majority owned by the Ramoses, and the Assignment for the Benefit of Creditors was nothing more than an elaborately planned fraudulent transfer scheme, orchestrated and executed by BEAI’s handpicked statutory assignee for the purpose of shielding BEAA from any successor liability claims the order approving the sale might offer. Moffatt further argued, based on but brief discovery, that it appeared BEAI failed to schedule significant assets on the Assignment, which were held by certain of the additional defendants as alter egos of BEAI, and BEAI had transferred hundreds of thousands of dollars in cash to ADC the day after the Assignment was executed, in contravention of section 726.106 of Florida’s Uniform Fraudulent Transfers Act. Finally, Moffatt argued it was entitled to pursue all of these claims in its own name and capacity, separate and distinct from Michael Phelan, the Assign-ee. It is on this point the trial court disagreed and on which we affirm.
 

 ANALYSIS
 

 Moffatt’s principal argument on appeal is that the trial court in the Contract Case erred by failing to appreciate that Moffatt does not seek to reach any assets in the “possession, custody or control of the as-signee” in the Assignment Case within the meaning of Chapter 727 of the Florida Statutes, but only property in the hands of entities not parties to that case — i.e., the proposed additional third-party defendants named in the Amended Motion for Proceedings Supplementary. In support of its argument, Moffatt directs our attention to section 727.105 of the Florida Statutes (2008), which states, in relevant part, that “[ejxcept in the case of a consensual lien-holder
 
 [3]
 
 enforcing its rights in personal property or real property collateral, there shall be no levy, execution, attachment or the like in respect of any judgment against assets of the estate in the possession, custody, or control of the assignee.”
 

 In former times, Moffatt’s argument might have had merit. However, one year before the execution of the Assignment for the Benefit of Creditors in this case, Florida’s legislature adopted its most extensive revision of Chapter 727,
 
 *899
 
 Florida Statutes, in a decade.
 
 See
 
 Ch. 2007-185, Laws of Fla. (eff. July 1, 2007). In this revision, the definition of “asset” in section 727.103(1), was expanded to include, for the first time, the phrase, “claims and causes of action, whether arising by contract or tort.” As amended, the definition now reads:
 

 “Asset” means a legal or equitable interest of the assignor in property, which includes anything that may be the subject of ownership, whether real or personal, tangible or intangible, including claims and causes of action, whether arising by contract or in tort, wherever located, and by whomever held at the date of the assignment, except property exempt by law from forced sale.
 

 § 727.103(1), Fla. Stat. (2008) (emphasis added). In addition, the standard assignment form, found in section 727.104(b), corresponds to the statute by specifically including “claims and choses in action.”
 
 See
 
 § 727.104(b), Fla. Stat. (2008).
 
 [4]
 
 Thus, under the terms of Florida’s Assignment for the Benefit of Creditors law as it presently exists, the assignor conveys to the assignee all of its assets as defined in section 727.103(1), except such assets as are exempt by law from levy and sale under an execution. Collectively, these assets create an “estate.”
 
 See
 
 § 727.103(9), Fla. Stat. (2008). The assignee, in turn, is required to take possession of, protect and preserve, and liquidate the assets of the estate and to convert the estate to money.
 
 See
 
 §§ 727.104(l)(b), -108, Fla. Stat. (2008). Under the statutory scheme as it now exists, only an assignee has standing to pursue fraudulent transfers, preferential transfers or other derivative claims.
 
 [5]
 

 Moffatt places primary reliance for its position that it has an independent right to pursue derivative claims against the proposed additional third-party defendants on
 
 Seminole Boatyard, Inc. v. Christoph,
 
 715 So.2d 987 (Fla. 4th DCA 1998).
 
 Seminole Boatyard
 
 is inapposite. In
 
 Seminole Boatyard,
 
 Seminole obtained a $746,998 judgment for unpaid rent against its commercial tenant, Florida Atlantic Marine (“FAM”), after which FAM filed for bankruptcy.
 
 Id.
 
 at 988. Seminole then filed a separate action against Robert Christophe, the president of FAM, alleging he had diverted funds from FAM before the bankruptcy filing, and also had “intentionally used FAM to ‘break’ George Whitten, the president of Seminole, and force Seminole to lose its property through foreclosure.”
 
 Id.
 
 In the meanwhile, Christophe purchased the bankruptcy estate’s claims against himself, obtaining a general release from the trustee in bankruptcy that
 
 *900
 
 included all rights, claims and causes of action against him that accreted to the bankruptcy trustee by virtue of the filing.
 
 Id.
 
 Christophe then successfully deployed the release as a complete bar on summary judgment in the separate action brought by Seminole on the theory that Seminole’s claim was among those accreted.
 
 Id.
 
 at 989. In its order approving Christophe’s claims purchase, the bankruptcy court expressly declined to opine concerning whether Seminole’s claim had, in fact, been released.
 
 Id.
 
 at 988.
 

 On Seminole’s appeal from the trial court’s adverse summary decision, the Fourth District Court reversed, relying principally on
 
 E.F. Hutton & Co. v. Hadley,
 
 901 F.2d 979 (11th Cir.1990), which involved a negligence claim against a broker, and which held that “nothing in the Bankruptcy Code authorizes a trustee to collect money owed to a creditor of the estate, but not to the estate.”
 
 Seminole Boatyard,
 
 715 So.2d at 989 (citing
 
 E.F. Hutton,
 
 901 F.2d at 986). Based upon
 
 E.F. Hutton,
 
 the court found that Seminole, not the bankrupt estate, was the real party in interest to seek to pierce FAM’s corporate veil and assert an alter ego claim or such other claims as existed for unpaid rent as against Christophe personally.
 
 Seminole Boatyard,
 
 715 So.2d at 990. In short, the district court of appeal concluded that Seminole’s action was for money owed it as a distinct creditor and not to the estate as a whole.
 

 The case before us is the obverse of
 
 Seminole Boatyard.
 
 Unlike Seminole in its case, Moffatt is not trying to collect money owed to it via an independent claim of misbehavior. Moffatt makes no allegation that any one of the proposed additional third-party defendants against whom it wishes to proceed has caused it a particularized harm separate and distinct from the detriment that may have befallen any other creditor of the assignment estate. Instead, Moffatt’s proposed supplemental proceeding is nothing more than a collection action for the purpose of assembling assets to satisfy its own judgment. Since at least 2007, the right to pursue such “claims[,] causes of action” and “dioses in action” has resided solely in a duly appointed assignee for the benefit of all creditors upon the appointment of the as-signee.
 
 [6]
 

 We acknowledge Moffatt’s concern that the Assignment for Benefit of Creditors statute may offer a larger window for collusion than might appear to be the case in a bankruptcy proceeding since, under the assignment statute as it exists, the assign- or in an Assignment for the Benefit of Creditors action chooses the assignee. However, this concern is neither expressly included among Moffatt’s points on appeal in this case, nor the true thrust of the argument Moffatt makes to us. We do note, however, that the assignee, upon appointment, is a fiduciary that is required to post a bond, the sufficiency of which is
 
 *901
 
 challengeable by any interested party, who must be given notice of the proceeding.
 

 In the final analysis, Moffatt’s stratagem is an impermissible end-run around the Assignment for the Benefit of Creditors statute, and an improper attempt to get to the head of the line, in front of all the other creditors of BEAI, in violation of the spirit, if not the letter, of the Assignment for the Benefit of Creditors statute.
 
 See In re Prime Motor Inns, Inc.,
 
 135 B.R. 917, 920 (Bankr.S.D.Fla.1992) (“To grant individual creditors ... the right to prosecute avoidance actions ... would unfairly enable individual creditors to pursue their own parochial or insular interests, to the detriment of all other creditors.”). We hold that, like a bankruptcy trustee, an assignee for the benefit of creditors has the exclusive authority to pursue fraudulent transfers and other “dioses in action” for the benefit of all creditors.
 

 Affirmed.
 

 [1]
 

 . Under the decisional law of this district, the issuance of a valid writ of execution and its return unsatisfied are jurisdictional prerequisites for proceedings supplementary.
 
 See
 
 § 56.29, Fla. Stat. (2008);
 
 Mejia v. Ruiz,
 
 985 So.2d 1109, 1112 (Fla. 3d DCA 2008).
 

 [2]
 

 . 4111 Lejeune Road, Ahern-Plummer, and Addition Acquisitions are joint venture partners in River Property.
 

 [3]
 

 . A "[cjonsensual lienholder” is defined in Chapter 727 as "a creditor that has been granted a security interest or lien in personal property or real property of the assignor prior to the date on which a petition is filed with the court and whose security interest or lien has been perfected in accordance with applicable law." § 727.103(6), Fla. Stat. (2008). In contrast to the analogous automatic stay provision of the United States Bankruptcy Code,
 
 see
 
 11 U.S.C. § 362(a) (2008), the filing by a debtor of an Assignment for the Benefit of Creditors does not automatically stay the enforcement by a consensual lienholder of its legal rights in the security.
 
 See
 
 § 727.105, Fla. Stat. However, Moffatt is not a consensual lienholder within this section.
 

 [4]
 

 . This language also appears in the version of section 727.104(b) prior to the 2007 revisions.
 
 See
 
 § 727.104(b), Fla. Stat. (2006).
 

 [5]
 

 . This change brings the administration of estates under Florida’s Assignment for the Benefit of Creditors law into conformity with the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. For more than fifty years, it has been settled law in bankruptcy that only a bankruptcy trustee has standing to bring derivative claims.
 
 See, e.g., In re Gen. Dev. Corp.,
 
 179 B.R. 335 (S.D.Fla.1995) (finding derivative claims are among the assets of an estate, which only the trustee has standing to prosecute). The same rule applies to preferential and fraudulent transfers.
 
 See
 
 11 U.S.C. §§ 547(b), 548(a);
 
 In re Curry & Sorensen, Inc.,
 
 57 B.R. 824, 828-29 (B.A.P. 9th Cir.1986) ("An action to set aside a fraudulent transfer must be brought in the name of the bankruptcy estate as the real party in interest.”);
 
 In re Fritz,
 
 88 B.R. 434, 435 (Bankr.S.D.Fla.1988) (holding pursuant to 11 U.S.C. sections 544(b) and 548(a) of the Bankruptcy Code, a fraudulent transfer claim is "available only to a bankruptcy trustee, not to a creditor”);
 
 In re Davidson Lumber,
 
 19 B.R. 871 (Bankr.S.D.Fla.1982) (finding petitioning creditors lacked standing to challenge transfer as fraudulent or preferential because such statutory remedies could be asserted only by a bankruptcy trustee or debtor-in-possession).
 

 [6]
 

 . Citing to
 
 Biloxi Casino Corp. v. Wolf,
 
 900 So.2d 734 (Fla. 4th DCA 2005), and
 
 Continental Cigar Corp. v. Edelman & Co.,
 
 397 So.2d 957 (Fla. 3d DCA 1981), Moffatt also argues the trial court had no discretion to deny proceedings supplementary to implead third parties. Although
 
 Biloxi
 
 states that "[u]pon a showing of the statutory prerequisites, the court has no discretion to deny the motion,” 900 So.2d at 734,
 
 Biloxi
 
 did not address any of the issues presented here.
 
 Continental Cigar
 
 is irrelevant for the same reason. Moffatt, however, failed to cite
 
 Arellano v. Bisson,
 
 847 So.2d 998 (Fla. 3d DCA 2003), in which this Court affirmed the trial court’s denial of a judgment creditors' motion for proceedings supplementary and to implead a third party because the property the judgment creditors wished to attach was not property that could be reached to satisfy a debt. The same is true in this case.