# Third District Court of Appeal

## State of Florida

Opinion filed February 15, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2576
Lower Tribunal No. 12-10447
_____

**Mamie Wilson, et al.,**
Appellants,

vs.

**Darrell Wilson, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Stanford Blake, Judge.

Frank Wolland, for appellants.

Marcus Law Center, and Alan K. Marcus and Christopher Machado, for appellee Gamalyah Israelion.

Before SUAREZ, C.J., and WELLS and EMAS, JJ.

WELLS, Judge.

Church of God Tabernacle, Inc., Church of God, True Holiness of Miami, Inc., Nationwide Holiness Church of Brotherly Love, Inc., Operation Keep Cool,

Inc., Silver Stone Singing Convention, Inc., Star of Dave's Temple, Inc., and Young Land USA, Inc., appeal from an order determining that the properties owned by these entities were in fact the personal property of Reverend John Wilson, the incorporator of each of these entities, thereby making their assets subject to probate as part of the estate of Reverend Wilson. Because no basis was alleged and no evidence adduced to support disregarding the corporate identity of these entities, we reverse and remand for adjudication of the claims raised by the pleadings below.

This action was commenced in March of 2012 by Mamie Wilson, Deshawn Green and Joseph Warren, Jr., on behalf of the plaintiff corporations, claiming to be the lawful board members of these corporations formed by the Reverend John Wilson. According to the verified complaint, following Reverend Wilson's death in December of 2010, a number of Reverend Wilson's children, specifically Darrell, Emanuel, and Elwyn Wilson (a/k/a Al Allen), as well as Steven Higg and Robert Watts, through trickery and deceit attempted to name themselves as members of the board of directors of these corporations; to oust the legitimate board members of these corporations; and to take over the operation of the properties and businesses owned by these corporations. The plaintiff corporations requested that the court below declare their right "to reinstate their original board

members," and to enjoin the defendants from further interfering in the management, operations, and business of these entities.

Darrell, Emanuel, and Elwyn Wilson admitted that they were Reverend Wilson's sons as alleged in the complaint and that each had "filed documents with the State of Florida *naming themselves as board members* of the plaintiff corporations." (Emphasis added). They also admitted that Robert Watts "had placed himself in the State of Florida Corporate Records as a board member" of the plaintiff corporations. Robert Watts also admitted that he had "placed himself in the State of Florida Corporate Records as a board member." Steven Higg filed an answer, but neither identified himself as a member of Reverend Wilson's family nor stated how he became a corporate board member.

Darrell and Emanuel Wilson ultimately were allowed to file a counterclaim seeking to be declared the rightful directors of the plaintiff corporations alleging only that "[u]pon information and belief" Reverend Wilson had "conducted a meeting of the Board of Directors at which time he had appointed . . . [Darrell and Emanuel Wilson] to the Board" of the plaintiff corporations.[1]

In April of 2013, Gamalyah Israelion, another of Reverend Wilson's fourteen children, although not named as a defendant in this action, sought leave to

---

[1] They also asked for the appointment of a receiver to operate the corporations' businesses; for an accounting of all of the corporations' books and records; for an injunction against Mamie Wilson; and for money damages against Mamie Wilson for conversion of corporate assets.

intervene below. Israelion, initially appointed as personal representative of Reverend Wilson's estate but later removed and replaced by Mamie Wilson, sought intervention after having been unsuccessful in having the probate court include as assets in Reverend Wilson's estate the properties owned by the corporations at issue here. According to his motion to intervene, Israelion asserted that because these corporations had not "been properly run as tax exempt[] 'not for profit corporations,'" the assets belonging to them belonged to Reverend Wilson individually and had to be included as assets in Wilson's estate.

A few months later, all but one of the plaintiffs and defendants executed a settlement agreement resolving all issues regarding board of director membership and sought court approval of the agreement. The intervenor and one of the original defendants, Elwyn Wilson, objected to the settlement and the agreement was not approved by the court below. The intervenor then filed a complaint naming Mamie, Darrell, and Emanuel Wilson, as well as Deshawn Green, Joseph Warren, Jr., Steven Higg, and Robert Watts as defendants in which he claimed that because the corporations created by Reverend Wilson were not actually "Not For Profit" corporations, the assets of these corporations belonged to Reverend Wilson individually and now to his estate.

Darrell and Emanuel Wilson moved to dismiss the intervenor's complaint but the motion was denied. They then counterclaimed alleging that documentation

4

online with the Secretary of State confirmed that the corporations at issue here "began as Not For Profit Corporations and ha[d] always maintained their status as Not For Profit Corporations." They further alleged that there was "no legal basis or authority for this or any other court to convert a Not For Profit Corporation into a For Profit Corporation for the purposes of distributing corporate assets through intestate succession." Otherwise stated, they claimed that no legal basis existed to disregard a corporation's identity based on its failure to function as a not for profit corporation.

This matter was finally tried over a period of four days in May, June, July and September of 2014. By the time of trial, literally countless motions and orders thereon had been filed resulting in a record exceeding 3000 pages. Additionally, many thousands of dollars had been expended in receivers' and attorney's fees.

On September 29, 2014, a final order was entered. That order determined that neither plaintiffs nor defendants proved "that they duly formed a properly constituted Board of Directors for the . . . Plaintiff corporations or in any way carried out any of the proper functions to constitute a duly formed corporation(s) for the business of Rev. Wilson." The order further determined that because the plaintiff corporations neither operated as not for profit corporations nor conducted regular director and shareholder meetings or maintained corporate minutes or books, records and bank accounts, they were not corporations at all. As a

consequence, the final order determined that the businesses conducted by the plaintiff corporations were "businesses owned by Rev. Wilson personally" essentially subject to distribution as part of Reverend Wilson's estate as requested by the intervenor.

We reverse this final order because the action was decided on a matter wholly outside the issues raised by the parties in their pleadings and because it is unsupported by controlling law.

The pleadings filed below by the plaintiffs and defendants herein raise but a single claim: whether the board of directors of each named corporation was comprised of the plaintiffs or the defendants. No issue was raised as to whether the named corporations were corporations, whether for or not for profit. That issue, which is the issue decided by the court below, was raised mid-proceeding by an intervenor and not by the parties to this action and should not have been determined in this action.

Florida Rule of Civil Procedure 1.230 no doubt authorizes intervention by a party claiming an interest in a pending litigation. Fla. R. Civ. P. 1.230 (providing that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention"). However, the general rule long-ago stated is that the interest that will support intervention is one of such direct and immediate character that the intervenor will be affected by a judgment:

The interest which will entitle a person to intervene must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.

Morgareidge v. Howey, 78 So. 14, 15 (Fla. 1918); see also Omni Nat'l Bank v. Georgia Banking Co., 951 So. 2d 1006, 1007 (Fla. 3d DCA 2007) ("In order for a party to intervene, its interest 'must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'") (quoting Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505, 507 (Fla. 1992)).

For these reasons, an intervenor must accept the record and pleadings as he finds them and cannot raise new issues and is limited to arguing the issues as they apply to him as a party. See Nat'l Wildlife Fed'n Inc. v. Glisson, 531 So. 2d 996, 997-98 (Fla. 1st DCA 1988); see also Omni Nat'l Bank, 951 So. 2d at 1007 ("The intervenor must accept the record and pleadings as they exist in the litigation and the intervenor may not raise any new issues."); Envtl. Confederation of Sw. Fla., Inc. v. IMC Phosphates, Inc., 857 So. 2d 207, 211 (Fla. 1st DCA 2003) ("Intervention is a dependent remedy in the sense that an intervenor may not inject a new issue into the case.").

The intervenor in this case, an already removed personal representative of Reverend Wilson's estate, demonstrated no interest of such a direct and immediate character that the intervenor would either gain or lose by the direct legal operation

7

and effect of a judgment on the issues raised by the parties to this action. A determination as to which set of board members was the proper board of directors would be, and is, of no moment to the interests of Reverend Wilson's estate. To the contrary, the interest of Reverend Wilson's estate is whether the assets owned by the plaintiff corporations were corporately or individually owned and, thus, whether or not they were part of Reverend Wilson's estate. That matter is wholly separate and apart from the issues raised by the parties to this action below. Intervention was, therefore, improper as was the issue adjudicated as a consequence thereof.

The court below also erred in determining that the plaintiff corporations were neither not for profit corporations nor any other kind of corporations, but were simply "businesses owned by Rev. Wilson personally." In so ruling, the court below, while not specifically ordering a judicial dissolution of the plaintiff corporations, effectively dissolved them, and went one step further and determined the proper owner of the corporations' assets. For a number of reasons, this is neither legally nor factually supportable.

First, no person authorized by section 617.1430 of the Florida Statutes moved for judicial dissolution of these not for profit corporations. See § 617.1430, Fla. Stat. (2016).[2] Indeed, the plaintiffs below did not seek a judicial dissolution;

---

[2] Section 617.1430 provides the grounds for judicial dissolution of a not for profit corporation:

A circuit court may dissolve a corporation:

(1)(a) In a proceeding by the Department of Legal Affairs if it is established that:

1. The corporation obtained its articles of incorporation through fraud; or

2. The corporation has continued to exceed or abuse the authority conferred upon it by law.

(b) The enumeration in paragraph (a) of grounds for judicial dissolution does not exclude actions or special proceedings by the Department of Legal Affairs or any state official for the annulment or dissolution of a corporation for other causes as provided by law.

(2) In a proceeding brought by at least 50 members or members holding at least 10 percent of the voting power, whichever is less, or by a member or group or percentage of members as otherwise provided in the articles of incorporation or bylaws, or by a director or any person authorized in the articles of incorporation, if it is established that:

(a) The directors are deadlocked in the management of the corporate affairs, the members are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered;

(b) The members are deadlocked in voting power and have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors; or

(c) The corporate assets are being misapplied or wasted.

(3) In a proceeding by a creditor if it is established that:

(a) The creditor's claim has been reduced to judgment, the execution on the judgment returned unsatisfied, and the corporation is

9

intervenor never professed to be a board member or shareholder of the plaintiff corporations.  In short, no party authorized to pursue dissolution sought such relief below.

Second, even if a proper party on a proper basis had moved for judicial dissolution of these corporations, dissolving these corporations would not have placed their assets in Reverend Wilson or his estate's hands.  Among other things, and as section 607.1405 of the Florida Statutes makes clear, dissolving a corporation does not transfer title, that is, ownership, of a corporation's assets.  See § 607.1405, Fla. Stat. (2016).[3]  Thus, even had the plaintiff corporations been

<div style="border-top: 1px solid black;"></div>

> insolvent; or
>
> (b) The corporation has admitted in writing that the creditor's claim is due and owing and the corporation is insolvent.
>
> (4) In a proceeding by the corporation to have its voluntary dissolution continued under court supervision.

[3] Section 607.1405 Fla. Stat. (2016), provides:

> (1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
>
> (a) Collecting its assets;
>
> (b) Disposing of its properties that will not be distributed in kind to its shareholders;
>
> (c) Discharging or making provision for discharging its liabilities;
>
> (d) Distributing its remaining property among its shareholders

<u>properly dissolved, their assets would not automatically become Reverend Wilson</u>
according to their interests; and

(e) Doing every other act necessary to wind up and liquidate its business and affairs.

(1) Dissolution of a corporation does not:

(a) Transfer title to the corporation's property;

(b) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;

(c) Subject its directors or officers to standards of conduct different from those prescribed in ss. 607.0801-607.0850 except as provided in s. 607.1421(4);

(d) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;

(e) Prevent commencement of a proceeding by or against the corporation in its corporate name;

(f) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or

(g) Terminate the authority of the registered agent of the corporation.

(3) The directors, officers, and agents of a corporation dissolved pursuant to s. 607.1403 shall not incur any personal liability thereby by reason of their status as directors, officers, and agents of a dissolved corporation, as distinguished from a corporation which is not dissolved.

(4) The name of a dissolved corporation shall not be available for assumption or use by another corporation until 120 days after the effective date of dissolution unless the dissolved corporation provides

11

or his estate's assets.

Third, the plaintiff corporations' failure to engage in the activities enumerated in the order on appeal does not justify their immediate dissolution. Contrary to the trial court's conclusion, failure to keep corporate minutes and to conduct regular stockholder and board of director meetings does not vitiate corporate identity. As section 617.0701(2) of the Florida Statutes expressly confirms, "[f]ailure to hold an annual meeting does not cause a forfeiture or give cause for dissolution of the corporation, nor does such failure affect otherwise valid corporate acts, except as provided in s. 617.1430 in the case of a deadlock among the directors or the members." § 617.0701(2), Fla. Stat. (2016). The record is that these closely held corporations were incorporated by Reverend Wilson, some over forty years ago, for the express purposes of operating numerous churches on properties purchased by the corporations. Throughout the years, annual reports for each of these entities were filed and from time to time, the

the Department of State with an affidavit, executed pursuant to s. 607.0120, permitting the immediate assumption or use of the name by another corporation.

(5) For purposes of this section, the circuit court may appoint a trustee for any property owned or acquired by the corporation who may engage in any act permitted under subsection (1) if any director or officer of the dissolved corporation is unwilling or unable to serve or cannot be located.

composition of their boards of directors were modified. As these corporations fulfilled their express purpose over many years, no evidence exists that the officers, directors, or shareholders of them contemplated abandoning their stated purpose. More to the point, the fact that these closely held corporations purchased properties and collected rents thereon provides no support for disregarding their corporate identities. This is especially so since no party to this action, and not even the intervenor, pled an action that would support piercing their corporate veils and concluding that Reverend Wilson and these churches were really one in the same, or created for an improper purpose, rather than merely conducting those activities necessary for the perpetuation of these corporations' stated goals. See Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("To 'pierce the corporate veil' three factors must be proven: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." (quoting Seminole Boatyard, Inc. v. Christoph, 715 So. 2d 987, 990 (Fla. 4th DCA 1998))); see also Roberts' Fish Farm v. Spencer, 153 So. 2d 718, 721 (Fla. 1963) ("Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law

13

which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil. This is the reason for the rule, stated in all Florida cases, that the courts are reluctant to pierce the corporate veil and will do so only in a court of competent jurisdiction, after notice and full opportunity to be heard by all parties, and upon showing a cause which necessitates the corporate entity being disregarded in order to prevent some injustice."); see also Lipsig v. Ramlawi, 760 So. 2d 170, 187 (Fla. 3d DCA 2000) ("[E]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained.").

Lastly, rather than adjudicating a matter not properly raised below, the trial court should have considered the single claim raised below, that is, whether the plaintiffs or the defendants were the rightful directors of the plaintiff corporations. The uncontradicted record is that from inception each plaintiff corporation herein filed an annual report and these annual reports listed the names and addresses of each corporation's directors. Based on this record, we agree with the trial court that the defendants Darrel Wilson, Sr., Emanuel Wilson, Steven Higg, Elwyn Wilson and Robert Watts were never members of the properly constituted board of directors of any of the plaintiff corporations. The record is that from the inception

14

of each of the plaintiff corporations in the 1960's through the 1990's, the board of directors of each corporation remained virtually unchanged. Significantly, at no time prior to Reverend Wilson's death in December of 2010 or even until March of 2012, were any of these defendants "named" to the board of directors of any of the entities at issue.[4] The same cannot be said for plaintiff, Mamie Wilson, who, according to annual reports filed by these corporations, was a member of various boards of directors well before, until, and after Reverend Wilson's death.[5]

---

[4] Given this, it is unsurprising that the defendants have not appealed this determination; nor did they file an appellate brief in this matter or at all participate in this appeal.

[5] The record as to the plaintiff corporations is:

Church of God, True Holiness of Miami, Inc.: incorporated by Reverend Wilson in 1966 with Wilma, Morrie and Lillie Wilson as its initial board of directors. Annual reports for this corporation confirm that by 1995 the board was comprised of John, Mamie and Mamie Yvonne Wilson and Walter Wortham. Thereafter, no changes were made to the board of directors until 2012 when the defendants added themselves to the board.

Church of God Tabernacle, Inc.: incorporated by Reverend Wilson in 1967 with Wilma Wilson and Andrew Alcomb as its initial board of directors. Annual reports for this corporation confirm that by 1995 the board was comprised of John, Mamie and Mamie Yvonne Wilson and Walter Wortham. Thereafter, no changes were made to the board of directors until 2012 when the defendants added themselves to the board.

Operation Keep Cool, Inc.: incorporated by Reverend Wilson in 1969 with Wilma Wilson, Andrew Alcomb, and Fulton Thomas as its initial board of directors. Annual reports for this corporation confirm that by 1995 the board was comprised of John and Mamie Wilson and Walter Wortham. Annual reports show that in 2007 Yvonne Wilson was added to the board which remained unchanged until 2012 when the defendants added themselves to the board.

Plaintiffs Deshawn Green and Joseph Warren, Jr. became members of various boards of directors after Reverend Wilson's death and before the defendants named themselves as the directors in their stead.

Accordingly, we reverse the trial court's dissolution of these not for profit corporations because dissolution was not properly raised as an issue, nor properly pled or tried below. We also affirm the trial court's determination that the individual defendants were never members of the properly constituted board of directors of any plaintiff corporation. Because the uncontradicted record

---

Young Land USA, Inc.: incorporated by Reverend Wilson in 1986 with Mamie Wilson and Walter Wortham as its initial board of directors. Annual reports for this corporation confirm that by 1995 the board was comprised of Mamie, John and Wesley Wilson. Annual reports show that in 2004 Yvonne Wilson was added to the board which remained unchanged until 2012.

Silver Stone Singing Convention, Inc.: incorporated by Reverend Wilson in 1986 with Mamie Wilson, Walter Wortham and John Manual as its initial board of directors. Annual reports for this corporation confirm that by 1995 the board was comprised of Mamie and John Wilson and Walter Wortham. Annual reports show that in 2007 Yvonne Wilson was added to the board which remained unchanged until 2012.

Star of Dave's Temple, Inc.: incorporated by Reverend Wilson in 1987 with Mamie Wilson and Walter Wortham as its initial board of directors. Annual reports for this corporation confirm that by 1995 the board was comprised of Mamie, John, and Wesley Wilson. Annual reports show that in 2007 Yvonne Wilson was added to the board which remained unchanged until 2012.

Nationwide Holiness Church of Brotherly Love, Inc.: incorporated by Reverend Wilson in 1991 with Mamie Wilson, Walter Wortham, and Christine Alexander as its initial board of directors. Annual reports show that in 1997 Yvonne Wilson was added to the board which remained unchanged until 2012.

demonstrates that the plaintiffs are the rightful directors of the subject corporations, we reverse the denial of plaintiffs' claim for declaratory relief and remand for entry of judgment in plaintiffs' favor.[6]

Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion.

---

[6] In so holding, we express no opinion as to propriety or potential outcome of any validly pled action for judicial dissolution of these not for profit corporations, a shareholder's derivative action, an action to pierce the corporate veil, or any other possible action in which the allegations of the intervenor's complaint may be raised and considered.